ALEXANDER McCOY v. NANCY E. WHITEHOUSE, et al.

1. TRIAL COURT—*Decisions, When Sustained.* The rulings and decisions of the trial court must be sustained, unless it affirmatively appears that there is error in them; and in doubtful cases this rule will often compel an affirmance of the judgment.

2. INVALID WILL; *Deed of Decedent's Land, Set Aside.* Where a person attempted to make a will, and such will, though invalid, discloses clearly his intentions respecting his property; and after his death, a party obtains from his legal heir a conveyance of the decedent's real estate upon representations that such conveyance carries out the intentions of the decedent, when in fact such is not its legal effect; and the heir, through mental incapacity and the feebleness of old age, is ignorant of such legal effect, and relies upon the representations made: *Held,* That a decision of the trial court, setting aside the conveyance, will not be adjudged erroneous, and this notwithstanding such party was acting in good faith, and intended by his subsequent disposition of the property to carry out the wishes of the decedent.

28 — 30 KAS.

*Error from Jefferson District Court.*

ACTION brought by *Cassandra Whitehouse* against *Alexander McCoy*, to set aside a certain deed executed by plaintiff to defendant. Afterward plaintiff died, and the action was revived in the names of her children and heirs, *Nancy E. Whitehouse* and three others. Trial by the court, without a jury, at the February Term, 1882; findings of fact and conclusions of law, for plaintiffs; motion to vacate the findings and conclusions aforesaid overruled, and excepted to; judgment that the deed be set aside and held for naught. *McCoy* brings the case to this court. The opinion contains a sufficient statement of the facts.

*Keeler & Gephart*, and *G. W. McCammon*, for plaintiff in error.

*Louis A. Myers*, and *D. H. Morse*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action in the district court brought to set aside a deed of conveyance to plaintiff in error. The case was tried by the court without a jury. Special findings of fact were made, upon which a judgment was entered in favor of the plaintiffs, and defendant alleges error. The facts are these: On January 3, 1881, the land in controversy belonged to W. T. Whitehouse. On that day he attempted to make a will, of which the following is a copy:

"JANUARY 3, 1881.—Know all men by this, that I, Thomas Whitehouse, have made a will bequeathing all property, both real and personal, as follows: I bequeath all my personal property to Alexander McCoy, and my farm to Davy and Annie McCoy, and Alexander McCoy to pay all my indebtedness; and also, my mother is to reside on the farm, and to be maintained and kept by the proceeds of the farm. I appoint Alexander McCoy to see that my mother has proper care and attention. Witness thereof, I affix my name and seal, this third day of January, 1881.      His

W. T. WHITEHOUSE. X

mark.

On January 8, he died. He was childless, unmarried, and left as his sole heir-at-law his mother Cassandra Whitehouse. She was a widow upwards of eighty years of age, quite infirm, of weak intellect, and of mental capacity far below that of the defendant and his attorney, with whom the transactions hereinafter referred to were had, and incapable of understanding or comprehending the legal effect of the papers which were then executed, from any reading or explanation made to her. The defendant was not a relative of the deceased, was ignorant of any intended disposition of the deceased's property to himself or his children; in fact was absent from the state and knew nothing of the matter until after his death. The decedent had formerly lived in the family of the defendant, and was fond of the two children named in the attempted will. A few days after the death of the decedent, the defendant was informed by Cassandra Whitehouse of the attempted will—obtained it, had it examined by an attorney and by the probate judge to see if it was of any validity. In company with his attorney he made two visits to Mrs. Whitehouse. At each of these interviews there were present two of her daughters—two of the plaintiffs in the present action. At the first, and this before any examination of the will by the probate judge, the defendant and his attorney advised her that the will was probably not good to pass the real estate, though it might pass the personal property. She said she wanted to carry out the wishes of her son. At the second interview they read the letter of the probate judge, and stated to her that the will was not good. After the letter of the probate judge had been read, she again said she wanted to carry out the wishes of her son. The defendant and his attorney then produced two instruments which they had previously prepared—one a deed of the land to defendant, the other a personal agreement of defendant, unsecured, as follows:

"I, Alexander McCoy, of Jefferson county, state of Kansas, hereby agree to pay all the lawful and just indebtedness of the late W. Thomas Whitehouse, and to support his mother, Cassandra Whitehouse, on the farm left by the said

deceased W. T. Whitehouse, during the natural life of the said Cassandra Whitehouse, for the following consideration, to wit: I am to have the title in fee simple to the real estate left by the said W. Thomas Whitehouse, which lies in Jefferson county, state of Kansas, and is described as follows, to wit: The S. E. $\frac{1}{4}$ of Sec. 29, T. 7, of R. 8, containing 160 acres, more or less; and also to have all moneys, credits, and personal property of every kind and nature owned and held by the said W. T. Whitehouse at the time of his death, including growing wheat. And I hereby further agree to pay to Annie McCoy and Daniel McCoy, two of my children, all balance of the proceeds of the sale of the above lands and personal property when all the said debts of the said W. T. Whitehouse are paid, and when all expenses for the support of the said Cassandra Whitehouse can be and are ascertained, less the amount of the said debts and cost of support of the said Cassandra Whitehouse during her natural life, including all personal expenses and costs of administration, and a reasonable compensation for all services in performing and carrying out the above matters.

"Signed, sealed, and dated, this 24th day of January, 1881.

His
"ALEXANDER McCOY. X    [Seal.]
mark.

"Attest: G. W. McCAMMON."

They represented to her that these two instruments would carry out the wishes of her son; and after some conversation between herself and daughters, she executed the deed to defendant and received from him the agreement. At the date of said deed the land was worth about $2,500, and was incumbered with a mortgage of about $700. The decedent's personal property was worth $600, and his debts, so far as proved up to the time of this trial, amounted to about $450. This transaction, it will be perceived, took place on January 24, within sixteen days after the death of W. T. Whitehouse. On May 23, Cassandra Whitehouse filed her petition to set aside such deed. Subsequently she died, and the case was revived in the names of her children and heirs, the present plaintiffs. The defendant was appointed administrator of the estate of W. T. Whitehouse, and out of moneys realized from the assets of the estate he supported and took care of Cassandra

Whitehouse until her death, and also paid her funeral expenses. As already stated, Cassandra Whitehouse was incapable of understanding or comprehending the legal effect of the papers which were executed, from any reading or explanation then made, and did not in fact understand their effect. This is according to the finding of the district court. Plaintiff in error challenges that finding, and claims that a part of it is entirely unsupported by the testimony. The testimony in reference to the capacity of Cassandra Whitehouse is not given in detail. In lieu thereof the record simply states as follows:

"Plaintiffs also introduced the testimony of fourteen credible witnesses, who testified that they were acquainted with said Cassandra Whitehouse in her lifetime, and that she was illiterate; that she could not read or write; that she was a fortune-teller, and that her intellect was so feeble that, in their judgment, she was incapable of transacting ordinary business; and that her age at her death was about eighty years. And the defendant introduced the testimony of twelve credible witnesses, some of whom had transacted business with said Cassandra Whitehouse, and two or three of whom were physicians, who testified that they were acquainted with her in her lifetime, and that her intellect and her capacity to transact business was equal to the average intellect and capacity of women of her age and education."

We do not understand that each of these several witnesses simply used the language copied above, but rather that that was the general scope and effect of their testimony. Now placing this general result of the testimony of plaintiffs' witnesses, that she was incapable of transacting ordinary business, along with the detailed statement of what took place at the two interviews, it cannot be said that there was no testimony on which to rest the finding of the court as to her incapacity and actual failure to comprehend. Upon these facts, ought the judgment of the district court, setting aside the deed, to be sustained? We confess to a great deal of doubt in the conclusion to which we have arrived. We are not sure that the district court was right in its conclusions, but

we are unable to say that we are convinced that it erred. There are many things that make against the plaintiffs' claim. The deed she executed was a very simple instrument, easy of comprehension, and a person of weak understanding could scarcely fail to perceive that the land was being conveyed to defendant, instead of to his children. There were present at each interview, hearing the conversation and talking with her about the matter, two of her children, of mature age, contingently interested against the conveyance, and of whose capacity no question is made. And generally speaking where a person of feeble understanding, though not absolutely *non compos mentis*, is aided and advised in good faith by a competent person, the court will not interfere on account of the feebleness of understanding. (*Hinchman v. Administrators*, 1 N. J. Eq. 100.)

Again, the testimony of these two children as to what took place at the interviews was not given. They are present plaintiffs, seeking the cancellation of this deed, and to be profited by success in the suit. They were in a position to know what took place at the interviews, and undoubtedly, from conversations at the time and subsequently with their mother, must have been able to throw light on the question of her capacity and understanding of the nature and effect of what she was doing.

And again, the actual results of the transaction may very likely be such as the original owner, W. T. Whitehouse, desired. So that it is evident that much can be said, and it has been well said by the learned counsel for plaintiff in error, against the conclusion reached by the district court, and in favor of the validity and fairness of the transaction between Cassandra Whitehouse and plaintiff in error.

On the other hand, it must be borne in mind that we approach the review of a record with the presumption that the rulings and judgment of the district court are correct. It is not enough for us to doubt their correctness; we must be convinced that they are erroneous before we are justified in disturbing them. The reasons for such a rule have been

often given, and need not be repeated. It is often the weight which turns the scale in favor of affirmance, and it so turns the scale in the case at bar. Nevertheless these things also must be noticed: First, Cassandra Whitehouse did not deal with the defendant on even terms. Ignorant, of weak mental capacity, stricken with years, and burdened with grief at the recent death of her son, she eagerly sought to carry out the wishes of that son and hastened to do that which she was told would effect that purpose.

Again, the papers which were executed did not carry out the intentions of the will. To determine this, we are to look not simply at results, or what has in fact been done, but, taking our stand at the time of the transactions, inquire what rights were vested and what could legally or possibly be done. The deceased evidently intended that the title of this real estate should vest in the children of the defendant. He intended that it should go directly to the children, burdened with a legal charge for the support of his mother during her lifetime. It went to the defendant freed from all charge, and all that the mother had to depend upon, was the personal obligation of the defendant. It may be that the defendant was then and is now pecuniarily responsible; but a fixed charge upon valuable real estate is a safer and surer guaranty than the personal obligation of any one. The decedent evidently intended that his mother should have the one, while the arrangement which was made only secured to her the other. It is true that during the life of Mrs. Whitehouse the defendant supported her, but she lived only a few months, and for that support he used only the assets of the estate. Suppose she had lived ten or fifteen years: what guaranty had she of continued support during all those years?—only his personal bond. Was it good? Would it continue to be good during all those years? Supposing he had died during that time, was his estate good, or would his heirs or devisees have performed his personal obligation? These possibilities suggest very clearly the difference between what was in fact done, and that which the decedent intended.

Again, as noticed, the decedent intended that the real estate should go to defendant's children. The deed conveyed it to defendant. Doubtless parental love would have prompted the defendant to protect his children. The bond which he gave if recorded might have been protection to them. But suppose Mrs. Whitehouse never recorded the bond, he might then have conveyed the real estate to a *bona fide* purchaser, and such purchaser would have acquired a good title. His business ventures or personal expenditures might have swamped his entire property, or he might have become alienated from these two children and devised his property elsewhere and thus left them penniless; so that it cannot be said as a legal proposition that the transactions in fact had carried out the intention of the decedent. It is not necessary to affirm that a criminal intent was proved upon defendant, that he was seeking to defraud both Mrs. Whitehouse and his children, or either of them. On the contrary, we think that the testimony fails to show any such intent, but it is clear that the papers which were executed did not carry out the expressed wishes of the decedent, and as Mrs. Whitehouse only expressed a desire to carry out her son's wishes, was ignorant of the legal effect of the papers, and relied upon the representations of the defendant and his attorney, it cannot be said that she assented to the transaction as it was in fact consummated.

Again, it may be noticed that Mrs. Whitehouse commenced this action within a few weeks after the execution of the deed, and thus did not by long silence acquiesce in and ratify what had been done.

Taking all these matters into consideration, we hesitatingly hold that error in the decision of the trial court is not shown, and therefore the judgment must be affirmed.

All the Justices concurring.